IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAWRENCE NORTHERN,

                    Plaintiff,

    v.                                                              OPINION and ORDER

LYNN DOBBERT, TONI JOHNSON,                                          16-cv-277-jdp
KOREEN FRISK, ANGELA STETTER,
CAROL WALTER, MATHEW MARTINSON,
LYNN WASHETAS, and CANDACE WARNER,[1]

                    Defendants.

Plaintiff Lawrence Northern partially tore his Achilles tendon playing basketball at the New Lisbon Correctional Institution. This is the second case about the treatment he received both before and after he received surgery for his injury. In this case, Northern alleges that defendant nurses and "Special Needs Committee" staff gave him improper medical care, retaliated against him, and discriminated against him, in violation of the United States Constitution and Wisconsin law. He says that prison staff made him stay in a bunk assignment forcing him to painfully climb stairs and a ladder, failed to properly treat his postsurgical wound, and failed to provide him with more comfortable shoes.

Defendants have filed two motions for summary judgment, including one based on Northern's alleged failure to exhaust his administrative remedies. Dkt. 23 and Dkt. 68. I conclude that all of Northern's constitutional claims should be dismissed, either because he failed to exhaust his administrative remedies or because his claims fail on the merits. Because

---

[1] I have amended the caption to reflect the spelling of defendants' names as reflected in their submissions.

I am dismissing all of Northern's federal claims, I will relinquish jurisdiction over his state-law medical malpractice claims; those claims will be dismissed without prejudice to him refiling them in state court.

## UNDISPUTED FACTS

The following facts are undisputed unless noted otherwise.

Plaintiff Lawrence Northern is a state of Wisconsin prisoner who was housed at New Lisbon Correctional Institution (NLCI) during the events relevant to this case. Northern is currently incarcerated at Jackson Correctional Institution, in Eau Claire, Wisconsin.

All of the defendants worked at NLCI for at least part of the time that Northern was housed there: Lynn Dobbert, Toni Johnson, Koreen Frisk, Angela Stetter, and Carol Walter were nurses, Mathew Martinson was a lieutenant, Lynn Washetas was a correctional management services director, and Candace Warner was the Health Services Unit (HSU) manager.

### A. Cell and bed assignment

On January 25, 2013, Northern injured his Achilles tendon during a basketball game. He suffered pain and lack of mobility for months afterward. (Some of the treatment that Northern received at this time was the subject of his previous lawsuit). On April 1, a DOC doctor concluded that Northern probably had a partial tear of his Achilles tendon and he ordered an orthopedic consultation. An orthopedic surgeon then diagnosed Northern as having a chronic left Achilles tear and offered Northern an elective reconstruction surgery.

On April 18, 2013, Northern submitted a health service request for approval to be moved to a lower tier at the prison with a low bunk, to avoid the pain and difficulty he had in

climbing stairs to get to the cell and climbing a ladder to get to his bed. He also asked for ice. Defendant Dobbert says that she responded the next day, granting all of those requests. She filled out a "special needs form" checking boxes for first-floor and low-bunk placements, and for ice. But Northern was not immediately moved to a low-tier, low-bunk cell; that took until April 28.

## B. Wound care

On May 9, 2013, Northern had surgery performed on his left Achilles tendon. The surgeon discovered that the Achilles tendon had healed in an elongated position. The surgeon's postsurgical instructions directed prison staff to begin physical therapy, change the surgical dressing in 72 hours, and keep the wound dry until it healed. Defendant Frisk filed out a special-needs form providing for a daily dressing change. But over the next few weeks, Northern received dressing changes only about half of the days, despite his wound continuing to seep.

## C. Special Needs Committee

During the summer and fall of 2013, Northern attended physical therapy to repair his Achilles tendon. He continued to experience pain and discomfort in his foot and ankle. He had difficulty walking, starting and stopping, changing directions and using stairs. At his therapy appointments he noted pain levels ranging from 3 to 6 on a 10-point scale. The tops of his low-rise state-issued boots and personal shoes chafed against his surgical scar, which had healed poorly. He made a health service request seeking approval for a high-top boot for medical reasons. Dobbert responded that health services "does not deal with shoes unless they have to be sent out to physically altered." Dkt. 94-16, at 2. Eventually, Northern turned to the prison's "Special Needs Committee" for help regarding his shoes.

Under DOC Bureau of Health Services policy no. 300.07, the prison used a Special Needs Committee, a rotating group of medical and non-medical officials, to decide prisoner requests for "special needs" or "comfort" items. A prisoner's treating medical staff are generally directed to refer requests for health-related property items or accommodations to the committee rather than write orders for particular items themselves.

During committee meetings, the inmate's entire medical chart is available for the medical staff members to review. Non-medical staff members of the committee do not review the medical record due to privacy concerns. The policy directs the committee to use guidelines attached in an appendix to the policy and "[e]stablished nursing protocols" to decide whether particular items or accommodations are appropriate. The appendix states the following about shoes:

> [The Health Services Unit] does not issue, purchase, or authorize special purchases if the inmate is able to wear regular shoes (common shoes that can be purchased from a store or catalog). Inmates should be encouraged to purchase their own personal shoes. If a patient is not able to wear the State supplied footwear due to a significant medical condition (i.e. diabetic with foot ulcers or need for Velcro shoes due to a [stroke] . . .) and provision of an alternative off the shelf shoe is necessary, the facility shall provide an alternative. These cases are to be very limited and determined on a case by case basis through the established committee/nurse review.

Dkt. 73-1, at 3.

Inmates are allowed to order personal property only from approved vendors. At the times relevant to this lawsuit, the DOC had three approved vendor catalogs, at least two of which had both high-top and low-top shoes available for purchase.

On May 6, 2014, Northern wrote to the Special Needs Committee seeking approval for better footwear requesting, "much improved footwear (i.e. high-topped State issued boots that

fit and tennis shoes) with greater support which effectively distributes pressure from a vend[o]r other than [the state-approved vendors], for example EastBay." Northern stated that his "Achilles tendon is chronically painful despite aggressive and conscientious management such as rest, ice, pain medication (Meloxicam) and activity modification" Dkt. 94-17, at 2. The Special Needs Committee included defendants HSU manager Warner, security representative Martinson, and ADA coordinator Washetas. On May 14, 2014, Northern sent a very similar letter to Martinson. Dkt. 94-18.

The Special Needs Committee met in early June 2014. Warner, as the only medical professional on the committee, reviewed Northern's medical records and the special needs policy and determined that there was no medical need to grant Northern's request. Northern's record contained no recommendation or suggestion from any of his treating physicians, either onsite or offsite, that high-topped boots or a particular type of shoe would facilitate his recovery or prevent reinjury, or that special shoes were otherwise medically necessary. Warner noted the denial in Northern's medical record on June 5. Northern was not notified.

On June 16, 2014, Northern submitted another letter asking for the approval of his special needs request for better shoes. In his letter, Northern stated that he "urge[s] [the committee] to promptly execute the process as I believe the appropriate footwear could alleviate/prevent my chronically painful Achilles tendonosis." Dkt. 94-20.

On June 19, 2014, Northern submitted an offender complaint that stated he was told that his May 6 request was forwarded to the Special Needs Committee. On June 24, defendant Warner issued a memo stating that Northern's request was denied. Dkt. 94-22. In the Comments/Explanation section, Warner wrote, "Can purchase personal shoes from approved catalogs." *Id.*

ANALYSIS

Defendants have filed two motions for summary judgment. To succeed on their motions, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment should be granted to the moving party. *Celotex*, 477 U.S. at 322.

I granted Northern lead to proceed on the following claims:

- Eighth Amendment and state-law medical malpractice claims against defendant Dobbert for failing to arrange for a lower-tier, bottom-bunk placement for him.

- Eighth Amendment, state-law medical malpractice, and First Amendment retaliation claims against defendants Dobbert, Johnson, Frisk, and Stetter for inadequate wound care.

- A retaliation claim against defendant Walter for threatening him with discipline to force him to sign a form refusing further medical treatment.

- Eighth Amendment and "class of one" equal protection claims against defendants Martinson, Washetas, and Warner, acting as the Special Needs Committee, for their denial of Northern's request for different shoes.

In his summary judgment opposition brief, Northern agrees to dismiss all of his retaliation claims. That leaves his Eighth Amendment, class-of-one, and medical malpractice claims.

## A. Cell and bed assignment

Northern brings Eighth Amendment and Wisconsin medical malpractice claims against defendant Dobbert for failing to arrange for him to be placed in the lower tier and in a bottom bunk despite his Achilles injury, despite knowing that Northern suffered pain from being forced to climb stairs to reach the upper tier and climb a ladder to reach his upper bunk.

I'll limit my discussion here to Northern's constitutional claim. The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer*, 511 U.S. at 847. To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Dobbert says that she did not violate Northern's rights because she immediately responded to his request and granted it: she produces a "Medical Restrictions/Special Needs"

form on which she granted him both "Low Bunk" and "1st Floor Only" status. Dkt. 71-2. The form is dated April 19, 2013. She says that she marked copies of the form to be distributed to Northern, the unit officer, and the unit manager by circling those names on the form.[2] She says that she did not delay in sending the form, and that it "was sent" to these three people, although she falls short of explaining exactly how this happened—that is, whether she distributed three copies herself or someone else did by looking at the recipients she circled. *See* Dkt. 71, at 4, ¶ 16.

Nonetheless, Northern was not transferred to a new cell right away. Dobbert blames this on unit staff, who should have moved Northern after receiving copies of the form. Northern contends that Dobbert did not send the form to unit staff, which could show that she was deliberately indifferent, or at least negligent, to his problem.

The problem for Northern is that he does not provide evidence that could lead a reasonable jury to infer that Dobbert withheld the form. Northern states that he did not receive a copy of the form until much later, and he says that a unit staff member told him that the unit did not receive the form from Dobbert. But the statement from unit staff to Northern is inadmissible hearsay that Northern cannot rely upon at summary judgment. *See, e.g., Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001).[3] The fact that Northern did not receive a copy of the form does not directly bear on whether the unit received a copy.

---

[2] Dobbert says that the form shows that copies were sent to Northern, the unit officer, and the unit manager, because she circled those three options. Although neither party addresses it, I conclude that this is not entirely correct. I agree that the form shows that Dobbert circled the "Unit Officer" and "Unit Manager" options on the form, but the third circle is above "Patient," circling a blank space rather than the word "Patient." The "Unit Manager" circle also partially circles "Patient." *See* Dkt. 71-2, at 1.

[3] Defendants counter with their own inadmissible hearsay: the complaint examiner's report, Dkt. 77-1, in which the examiner discusses speaking with a nurse, who recounted that she

So all Northern really has to support his claim is that he was not moved after Dobbert filled out the form. But this fact does not directly address *why* he was not moved and does not necessarily contradict Dobbert's statement that she didn't delay. There are at least three possible reasons for the delay: Dobbert's delay, an error in the internal mailing process, or a mistake or conscious disregard by unit staff. Northern speculates that the delay was Dobbert's fault instead of one of the other reasons, but his mere speculation is not enough for a reasonable jury to conclude that she caused the delay. *See, e.g.*, *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)).

Northern also contends that Dobbert "cannot disclaim responsibility for failing to provide adequate care by foisting off responsibility to a non-medical professional." Dkt. 93, at 5. But "foist" is a loaded word suggesting that Dobbert saddled unit staff with an unwelcome task for which they were not suited. Northern does not provide any evidence suggesting that this was the case. To the contrary, it is undisputed that the unit staff is responsible for fulfilling medical staff's orders by physically moving an inmate into the low-tier, low-bunk placement. If Dobbert indeed sent the special needs form to unit staff, then she was entitled to rely on unit staff to carry out the physical placement. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do

---

called a unit staff member to see if Northern's restriction was in the unit records, and the unit staffer said that the restriction was indeed in the unit's binder. The examiner concluded that Dobbert's restriction was in the binder but overlooked by the unit staff. *Id.* But even assuming that the examiner's report is admissible as a business record, the additional layers of hearsay within the report are not admissible on that basis.

another's job. . . . [P]eople who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). Northern provides nothing more than speculation that Dobbert withheld the form. And he does not explain how Dobbert should be held liable under the Eighth Amendment for timely sending the form but then failing to check back to see that her order had been followed. So I will grant summary judgment to defendants on Northern's Eighth Amendment cell- and bunk-assignment claims against Dobbert. I address Northern's state-law negligence claim below.

## B. Wound care

Northern brings Eighth Amendment and state-law medical malpractice claims against defendants Dobbert, Johnson, Frisk, and Stetter, alleging that they inadequately treated his surgical wound. Defendants filed a motion for summary judgment on exhaustion grounds on these claims. Dkt. 23. I stayed a ruling on that motion, giving defendants a chance to supplement their motion with argument regarding the claims he added in his amended complaint. Defendants did not amend their motion to add exhaustion arguments about the new claims, so these are the only claims for which I will consider an exhaustion defense.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and applies to all inmate suits. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement's primary purpose is to alert the state to the problem and to invite corrective action. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Section 1997e(a) requires "proper exhaustion," *Woodford*, 548 U.S. at 93; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which means that the prisoner must follow prison rules when filing the initial grievance and all necessary appeals, "in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024. The Wisconsin Department of Corrections uses a four-step process called the Inmate Complaint Review System (ICRS) to review inmate grievances. *See* Wis. Admin. Code Ch. DOC 310. Because exhaustion is an affirmative defense, defendants bear the burden of establishing that Northern failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Defendants say that Northern did not file a grievance discussing his May 2013 wound care until July 2014: grievance No. NLCI-2014-14558. Northern mentioned a number of medical-care-related issues in that grievance, none of which concerned events within the 14-day time limit for filing a grievance, so the examiner rejected it as untimely.

Northern appears to agree that this grievance did not exhaust his wound-care claims. But he points to a subsequent grievance, No. NLCI-2014-16063, that he filed in August 2014 and fully exhausted. In that grievance, Northern alleged that defendant Johnson refused to change his surgical-wound dressing on May 18 and 19, 2013 in retaliation for him refusing to sign a "refusal of treatment" form after he missed a medical appointment in February 2013 because he wasn't given proper notice. Dkt. 36-9, at 2–3. In June 2013 and August 2014, Northern missed medical appointments because of errors in the notice process, but he signed refusal-of-treatment forms under duress because he was afraid of the retaliatory consequences

if he didn't sign them. *Id.* at 3–4. Northern complained about the notice errors and the threats of retaliation for refusing to sign the refusal-of-treatment forms.

The grievance examiner recommended dismissing the grievance, noting that many of the individual events took place past the 14-day deadline to file a timely grievance. Dkt. 36-11, at 2. The examiner also stated, "The offender complains of retaliatory action by HSU staff when inmates refuse to sign [the refusal-of-treatment form], but provides no hard and fast evidence how he has been retaliated against, he simply describes instances where he feels he has been wronged, which does not constitute retaliation." *Id.*

Northern contends that this grievance served to exhaust his Eighth Amendment medical care and First Amendment retaliation claims regarding his wound care because the examiner resolved the grievance on its merits. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."). But the thrust of Northern's grievance was the notice errors and retaliation for his refusal to sign the refusal-of-treatment form. His grievance was not directly about the quality of medical treatment he received. The examiner concluded that Northern didn't explain how the adverse actions he says he suffered were done for a retaliatory reason. The examiner did not address the merits of the underlying adverse action—the wound care—that Northern thought was retaliatory. That is, the examiner did not decide whether Northern did or did not receive adequate medical care.

The grievance may have exhausted part of Northern's *retaliation* claims, but he has voluntarily dismissed those claims. Even under *Maddox*, it is not fair to say that the examiner

decided Northern's *medical-care* claims on the merits, particularly given that the same examiner rejected as untimely Northern's earlier '14558 grievance directly about the same medical care. Because I conclude that Northern failed to properly exhaust his Eighth Amendment claims about wound care, I will dismiss those claims without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). Although the dismissal is without prejudice, Northern likely will not be able to exhaust his claims because any future grievance would also be untimely.

## C. Requests to the Special Needs Committee

### 1. Eighth Amendment

Northern contends that the Special Needs Committee defendants violated his Eighth Amendment rights by denying his special needs request for better shoes even though he was suffering through chronic pain, a weakened Achilles tendon, and a poorly healed surgical scar, and his state-issued low-rise boots chafed his surgical scar, making it difficult for him to walk.

To start, I'll grant defendants' motion for summary judgment on this claim as to defendants Washetas and Martinson. They were the non-medical professionals on the committee who said that they deferred to Warner's decision on Northern's request. They did not violate the Eighth Amendment by doing so. *See, e.g., Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one.").

That leaves Warner. Warner says that she reviewed Northern's medical records before making her decision to deny Northern's request. She said there were two reasons to deny the request: (1) she didn't have the authority to overrule Northern's doctors, none of whom

indicated on the record that special footwear was necessary; and (2) nothing in the record showed that special shoes were medically necessary.

In the past I have expressed concern that the Special Needs Committee procedures do not clearly explain how the committee should weigh recommendations by a prisoner's doctors, particularly given that a clear purpose of the policy is to take decision-making power out of doctors' hands and place it in the committee's. *See, e.g., Fields v. DeYoung*, No. 16-cv-405-jdp, 2018 WL 5995487, at *8 (W.D. Wis. Nov. 15, 2018). This case presents a related problem. Here, Warner says that she denied the request in part because she was not authorized to overrule Northern's doctors, none of which recommend special shoes. But Warner doesn't point to anything in the record suggesting that Northern raised his complaints of pain to a doctor and was denied a recommendation. Nothing in the policy says that a doctor recommendation is necessary for the committee to grant an inmate's request.

That said, Warner's precise interpretation of the Special Needs Committee policy is not the ultimate issue. *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996) (violation of a prison policy alone does not violate Constitution). The questions are still whether Northern had a serious medical need and whether Warner consciously disregarded it. In his summary judgment materials, Northern talks about the various problems he was suffering and how his shoe chafed against his surgical scar. But his correspondence with the committee did not include that level of detail. To the committee, he said only that he suffered from chronic pain and he expressed his opinion that a shoe from a non-approved vendor would help. He did not mention his shoe chafing against his scar.[4]

---

[4] Northern mentioned the chafing against his scar only later, in a July 2014 inmate grievance. *See* Dkt. 94-23.

Chronic pain can be a serious medical need under the Eighth Amendment. But even assuming that Northern has shown that Warner was aware of a serious medical need, Northern does not show that Warner consciously disregarded it. The committee's role is a limited one. Warner was not sitting in the ordinary nurse's role in assisting with diagnosis and treatment of a patient, with many potential treatment options. She was giving an up-or-down decision on the request to be allowed shoes from a non-approved vendor. But Northern presented only vague allegations of pain and his opinion—unsupported with any foundation—that high-top shoes from the non-approved vendor would be better for him than those in the approved-vendor catalogs. Warner directed him to buy shoes from an approved vendor, and there's no reason to think that this choice was worse than going through a non-approved vendor, much less that the decision was so ill-advised as to show conscious disregard of Northern's pain. The Eighth Amendment does not entitle Northern to demand specific care, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and it certainly does not entitle him to shoes from a particular vendor.

Northern contends that the committee didn't actually deny his request based on Warner's expert review of his medical records. He says that Warner's failure to apply medical judgment to his request can be inferred by the lack of reasoning in (1) the June 5, 2014 note that Warner made in his medical records denying his request, and (2) the June 24 memo notifying him that she denied his request. Northern suggests that instead, defendant Martinson improperly influences the committee's decisions by bending the rules for inmates he likes and punishing those he doesn't; Northern says that the committee has given shoes to other inmates with similar or lesser problems, even in some cases where it was not medically necessary.

I agree that a medical staff member's failure to exercise medical judgment or the committee's non-medical staff members' failure to defer to that judgment could violate the Eighth Amendment. But I conclude that Northern does not create a genuine dispute of material fact about the committee's decision; all he provides is his speculation about Warner's and Martinson's motives. Warner now explains that Northern's medical records didn't provide a reason for her to respond to his vague request of pain by ordering special shoes, particularly given Northern's ability to buy them from an approved vendor. The lack of explanation in Warner's medical note and rejection memo does not contradict the explanation she offers now, nor does it provide any basis to infer that her original decision was not based on medical judgment. The implication in Warner's June 24 memo is clear: shoes from an approved vendor would be adequate to address Northern's request.

Northern could dispute Warner's explanation of her reasoning if he had evidence that the committee based its decision on other, impermissible factors. He gives examples of other prisoners who received shoes despite having similar or lesser problems. But even assuming that Northern is correct about the objective severity of other inmates' problems compared to his own, the Constitution does not guarantee that prison officials will be perfectly consistent in the implementation of their policies. *See Russell v. Richards*, 384 F.3d 444, 448 (7th Cir. 2004). And I reiterate that Northern presented the committee with only a vague description of his pain; he doesn't explain what evidence the committee had before it in granting other inmates' requests and denying his own.

Northern states that the reason for the inconsistency is defendant Martinson's like or dislike of particular prisoners. He says that several years before the events of this case, Martinson sentenced him to 60 days of disciplinary separation over a disagreement about

housing placement. But even assuming that Martinson disliked Northern, that is not enough to show that Martinson impermissibly influenced the committee's decision in this instance. Northern says that "in [his] experience, inmates who curry favor with Lieutenant Martinson are more likely to have their special needs requests granted" and that "inmates who do not get along with Lieutenant Martinson will have their special needs requests denied." Dkt. 94, at 9, ¶¶ 90–91. But Northern provides no evidentiary support for this statement. Northern thinks that the decision here was unfair, as compared to those regarding other prisoners, but his mere speculation that Martinson improperly influences the committee's decisions is not enough to create a genuine dispute of material fact over the committee's motivations.

Northern raises additional arguments in support of his claim. He contends that the policy requires the committee to give a prisoner new shoes if he can't wear the state-issued ones. Defendants dispute the meaning of some passages in the Special Needs Committee policy about when the state will buy special shoes. But regardless, a violation of the policy is not necessarily a violation of the Eighth Amendment. Northern does not argue that he was unable to buy shoes from the approved vendors or that Warner was aware of his indigence and allowed him to suffer anyway. *See Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012) ("The Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care.").

Northern tries to support his claim with expert testimony from orthopedic surgeon Brian Toolan. Toolan says that the committee "did not permit Mr. Northern to obtain footwear that would properly and safely protect his surgical wound." Dkt. 63, at 2. To support this conclusion, Toolan states that more supportive high-top shoes are generally better for someone recovering from an Achilles surgery and that one would pick a cut of shoe that didn't rub

against the surgical scar. *Id.* at 10–11. But this testimony doesn't address the material question, which is whether Warner was adequately informed of Northern's difficulty with the state-issued shoes. Northern did not describe his problems to Warner in any detail. Nor does Toolan give any reason to suggest that high-top shoes from an approved vendor wouldn't address Northern's problem. Accordingly, I will grant defendants' motion for summary judgment on the Eighth Amendment shoe claims.

### 2. Equal protection "class of one"

Northern brings equal protection "class of one" claims against the Special Needs Committee defendants, contending that he was intentionally singled out for worse treatment than other prisoners. Defendants seek summary judgment on these claims, contending in part that they are entitled to qualified immunity. Because a class-of-one claim in the prison context is not clearly established, I will grant defendants' motion for summary judgment on these claims.

Government officials are entitled to qualified immunity unless their conduct violated a federal statutory or constitutional right, and the unlawfulness of their conduct was "clearly established at the time." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). Northern has the burden of demonstrating that defendants' violation of the Fourteenth Amendment was "clearly established." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). Northern can show that the violation was clearly established if "a violation of this right has been found in factually similar case, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008).

When I granted Northern leave to proceed on his class-of-one claims, I warned him that

the United States Supreme Court has explained that some discretionary decisions are not susceptible to class-of-one claims "because treating like individuals differently is an accepted consequence of the discretion granted." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008). There is very little authority suggesting that decisions in the prison context can support class-of-one-claims. The only authority that Northern cites is another case from this court, *Shaw v. Wall*, No. 12-cv-497-wmc, 2014 WL 7215764, at *3 (W.D. Wis. Dec. 17, 2014) (dismissing case but stating, "This is not to hold that a class-of-one equal protection claim is *never* cognizable in the prison context." (emphasis in original)), and a district-court case from the Second Circuit, *Smith v. Masterson*, No. 05 CIV. 2897 (RWS), 2006 WL 2883009, at *15 (S.D.N.Y. Sept. 29, 2006) (cursorily denying a motion to dismiss a prisoner class-of-one claim).

Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The authority cited by Northern is not Supreme Court or Seventh Circuit court of appeals precedent and it comes nowhere close to forming a consensus of persuasive authority. So I conclude that qualified immunity applies to Northern's class-of-one claims and I will grant defendants' motion for summary judgment regarding those claims.

**D. State-law claims**

I have dismissed Northern's federal claims, which leaves Northern's medical malpractice claims against nurses Dobbert, Johnson, Frisk, and Stetter. Ordinarily, when this court dismisses all of the federal claims in a lawsuit before trial, it will dismiss the supplemental-jurisdiction state-law claims without prejudice, leaving the plaintiff free to pursue those claims in state court. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Northern contends

that I should not dismiss his medical malpractice claims because they would be immediately dismissed in state court.

I previously dismissed these claims myself because Wisconsin Statutes Chapter 655 does not allow claims against nurses. *See* Dkt. 46, at 3. But I later reconsidered that rationale in another case and reinstated Northern's claims. Dkt. 52, at 2 (citing *Smith v. Hentz*, No. 15-cv-633-jdp, 2018 WL 1400954, at *3 (W.D. Wis. Mar. 19, 2018) ("In short, although defendants Stetter and Hentz are not subject to the requirements of Chapter 655, Smith may still bring a medical malpractice claim based on common law negligence. To conclude otherwise would be to leave patients injured by the negligent actions of state-employed nurses without any remedy at all, a conclusion this court will not reach without clear guidance from the Wisconsin legislature or Wisconsin state courts.").

Northern now argues that I should keep the medical malpractice claims because a state court would immediately dismiss them under Wisconsin precedent. Dkt. 93, at 35–36 (quoting *Rogers ex rel. Rogers v. Saunders*, 2008 WI App 53, ¶ 2, 309 Wis. 2d 238, 241, 750 N.W.2d 477, 479 ("A nurse employed by a health care provider (as defined by the chapter) has no personal exposure for malpractice liability."). Northern states that "[r]e-routing [the malpractice claims] to the state courts is tantamount to an outright dismissal." *Id.* at 36.

Given my analysis in *Smith*, I do not have as pessimistic a view of the medical malpractice claims in state court as Northern does. But I will not retain jurisdiction over the claims out of fear that the Wisconsin courts would consider them legally unsupportable. The uncertainty associated with these state-law claims is a reason to relinquish jurisdiction and allow the Wisconsin court system to say what Wisconsin law is. Northern's malpractice claims will be dismissed without prejudice.

ORDER

IT IS ORDERED that:

1.  Plaintiff Lawrence Northern's retaliation claims are VOLUNTARILY DISMISSED.

2.  Defendants' exhaustion-based motion for summary judgment on plaintiff's Eighth Amendment wound-care claims, Dkt. 23, is GRANTED. Those claims are DISMISSED without prejudice.

3.  Defendants' motion for summary judgment on plaintiff's remaining federal-law claims, Dkt. 68, is GRANTED.

4.  Northern's state-law claims are DISMISSED without prejudice.

5.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered September 30, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge